UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHERLY CADET,

                                    Plaintiff,

                    -v.-

ALLIANCE NURSING STAFFING OF
NEW YORK, INC.,

                                    Defendant.

---

21 Civ. 3994 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Sherly Cadet, proceeding *pro se*, brought this action in
May 2021 against Defendant Alliance Nursing Staffing of New York, Inc.,
alleging claims under various federal, state, and local statutes.  While Plaintiff
has outwardly professed an interest in continuing with this case, she has — in
the sixteen months that followed the Court's resolution of Defendant's motion
to dismiss — repeatedly failed to comply with the Court's discovery orders,
despite clear warnings that noncompliance could result in the dismissal of her
case.  Plaintiff's disregard for Court orders reached its crescendo with her
refusal to attend her rescheduled deposition on December 1, 2023.  As detailed
in the remainder of this Opinion, Plaintiff has left the Court with no choice but
to sanction her pursuant to Federal Rule of Civil Procedure 37(b)(2)(A) in the
form of dismissing her case.

**BACKGROUND**

**A.    Factual Background**

The Court assumes familiarity with the factual background contained in
Plaintiff's Complaint.  That background is detailed extensively in the Court's
September 29, 2022 Opinion and Order resolving Defendant's motion to
dismiss, and is incorporated by reference here.  *See Cadet* v. *All. Nursing
Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202 (S.D.N.Y. 2022).

In broad summary, Plaintiff, a Black woman, was employed by Defendant
as a home health aide from July 2018 to February 26, 2019.  *Cadet*, 632 F.
Supp. 3d at 211.  Plaintiff's job responsibilities included providing assistance to
Alliance's clients in their homes with their activities of daily living ("ADLs").  *Id.*
On January 23, 2019, Plaintiff was assigned by Defendant to work two twelve-
hour shifts at the home of an individual with a history of displaying racial
animus.  *Id.*  Plaintiff alleges that Defendant designated her for this
unfavorable job assignment with knowledge of that individual's history of racial
animus and, further, that Plaintiff encountered this animus when she arrived
at the individual's home on January 24, 2019.  *Id.*  In particular, Plaintiff
alleges that the individual subjected her to verbal abuse, including threats and
racially disparaging remarks, to the point that Plaintiff felt compelled to leave
the job site.  *Id.* at 212-13.

Following the January 24, 2019 incident, Plaintiff was debriefed by her
supervisor; she subsequently sent a letter to Defendant on February 13, 2019,
indicating her desire "to end in a professional way with [Defendant]."  *Cadet,*

632 F. Supp. 3d at 215. While Plaintiff alleges that this letter was not evidence of her intent to end her employment with Defendant, but rather was an invitation to have a dialogue regarding the incident, such a dialogue never took place. *Id.* at 215-16. Instead, on February 26, 2019, Defendant terminated Plaintiff's employment, precipitating the instant case. *Id.*

## B.   Procedural Background

While the instant decision regarding sanctions is predicated on Plaintiff's repeated failure to comply with its discovery orders, the Court includes here a detailed recitation of the procedural history of this case in order to contextualize Plaintiff's dilatory approach to the litigation as a whole. *See S. New Eng. Tel. Co.* v. *Glob. NAPS Inc.*, 624 F.3d 123, 143 (2d Cir. 2010) ("The district court is free to consider the full record in the case in order to select the appropriate sanction." (internal quotation marks omitted)).

### 1.   The Motion to Dismiss and Plaintiff's Post-Motion Letters

On May 4, 2021, Plaintiff initiated this case by filing her *pro se* Complaint. (Dkt. #2). The Complaint

> allege[d] myriad federal and New York City civil rights violations, including claims for retaliation, hostile work environment, and disparate treatment pursuant to 42 U.S.C. § 1981 and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-134; disability discrimination and interference with protected rights under the NYCHRL; and violation of the Thirteenth Amendment of the Constitution, U.S. Const. amend. XIII.

*Cadet*, 632 F. Supp. 3d at 210-11.

On October 7, 2021, the Court held a pre-motion conference regarding Defendant's anticipated motion to dismiss, and set a briefing schedule for that motion on the following day.  (Oct. 7, 2021 Minute Entry; Dkt. #19 (scheduling order)).  On December 30, 2021, with briefing on the motion to dismiss nearly concluded, Plaintiff filed a letter motion requesting, in part, that the Court convert the motion into one for summary judgment, to which the Court responded that it would reserve judgment.  (Dkt. #29, 32).

On September 29, 2022, the Court issued an Opinion and Order granting in part and denying in part Defendant's motion to dismiss, and expressly stating that it "ha[d] elected not to convert the motion into one for summary judgment." *Cadet*, 632 F. Supp. 3d at 225 n.8.  In that opinion, the Court found that Plaintiff had alleged sufficient facts to state a claim under Section 1981, observing that the temporal proximity between Plaintiff's complaints of harassment and her termination was sufficient to state a claim, notwithstanding Defendant's counterargument that Plaintiff's February 13, 2019 letter was the real impetus for her termination.  *Id.* at 226-28.  On this point, the Court found that the import of the letter was a factual dispute better suited for resolution at a later stage of the case.  *Id.* at 228.

The Court also concluded that Plaintiff could continue with her claims for hostile work environment and disparate treatment, finding that Plaintiff had sufficiently alleged that Defendant was aware of the racial animus of the client to whom Plaintiff had been assigned, and that Defendant favored white caregivers when assigning work.  *Cadet*, 632 F. Supp. 3d at 228-35.

Conversely, the Court granted Defendant's motion to dismiss Plaintiff's claims for interference with protected rights under the NYCHRL, her claims under New York Labor Law § 195(6), her claims for disability discrimination under the NYCHRL, and her claim under the Thirteenth Amendment. *Id.* at 219-21, 224-25, 236-38. At the conclusion of the opinion, the Court ordered Defendant to file its answer on or before November 7, 2022, and ordered the parties to file a joint status letter regarding the next steps in the case and a proposed case management plan on or before November 14, 2022. *Id.* at 239.

On October 8, 2022, Plaintiff filed a letter motion seeking partial reconsideration of the Court's dismissal of her claim for interference with protected rights, which request the Court denied on October 14, 2022. (Dkt. #38, 40). A scant two weeks later, on October 31, 2022, Plaintiff filed an extensive letter motion to amend her complaint to add a cause of action for "libel *per se*," based on the content of Defendant's opposition to Plaintiff's reconsideration motion. (Dkt. #41). After receiving additional briefing from the parties, the Court denied Plaintiff's motion to amend on November 3, 2022. (Dkt. #42-44). In its endorsement, the Court reminded the parties of their obligation to file a joint status letter and proposed case management plan by November 14, 2022. (Dkt. #44).

On November 14, 2022, Defendant submitted a status report and proposed case management plan, but indicated that the submission was made "without Plaintiff's input," in light of Plaintiff's belief, conveyed to defense counsel in an email, that "[Defendant's] proposed CMP is 'premature.'" (Dkt.

#47).  Defendant further indicated that "based on Plaintiff's opinion about [Defendant's] defense and the trajectory of the case, Plaintiff intend[ed] to engage in certain motion practice." (*Id.*).  Plaintiff, in turn, submitted her own status update requesting that the Court stay the entry of any case management plan, and that the Court instead set a briefing schedule for a proposed motion to strike Defendant's answer and a proposed motion for summary judgment.  (Dkt. #48).  By endorsement, the Court denied Plaintiff's request for leave to file a motion for summary judgment, noting that "there are numerous factual issues that must be resolved ... through discovery prior to any potential motion for summary judgment." (Dkt. #49).  To that end, the Court again ordered the parties to meet and confer regarding a proposed case management plan, and to notify the Court on or before November 29, 2022, regarding the outcome of that conference.  (*Id.*).

Thereafter, on November 28, 2022, Plaintiff filed her motion to strike Defendant's answer and to seek reconsideration of the Court's dismissal of her disability discrimination claims.  (Dkt. #50).  The next day, Plaintiff unilaterally submitted her own proposed case management plan, proposing that fact discovery, including the depositions of fact witnesses, be completed by May 15, 2023.  (Dkt. #53).  Solicitous of Plaintiff's *pro se* status, the Court entered Plaintiff's proposed case management plan that same day, marking the beginning of the discovery period.  (Dkt. #54, 55).  The Court advised the parties, however, that "in light of the extended discovery schedule, the Court

expects that there will be no requests for extensions of discovery deadlines absent exceptional circumstances." (Dkt. #54).

### 2.    Plaintiff's Delaying Tactics

After discovery commenced, Defendant sought referral of the case to the designated Magistrate Judge or the District's Mediation Program in service of a potential negotiated resolution. (Dkt. #56). Plaintiff refused, however, and responded with a letter motion seeking expedited responses from Defendant regarding certain Rule 26 disclosures. (Dkt. #58). By endorsement on December 8, 2022, the Court denied Plaintiff's request, reminding Plaintiff that "[n]ow that a case management plan is in effect, the Court expects the parties to adhere to its deadlines." (Dkt. #59). Additionally, in an order issued on January 6, 2023, the Court denied Plaintiff's motions to strike and for partial reconsideration. (Dkt. #62).

These efforts by the Court to move the case along proved unsuccessful. On March 16, 2023, the parties filed a request seeking a 30-day adjournment of the discovery deadlines, in light of Plaintiff's underlying request for an extension of time to respond to Defendant's timely-served discovery requests. (Dkt. #63). That same day, the Court granted the parties' request while reminding them that it "ha[d] already granted the parties a generous discovery schedule ... and [that] the parties should not expect any further extensions absent compelling circumstances." (Dkt. #64). On April 3, 2023, the Court entered the parties' proposed stipulation and order governing the treatment of confidential material in the case. (Dkt. #65-66).

On April 12, 2023, while discovery was ostensibly ongoing, Plaintiff filed a 51-page letter motion seeking leave to dismiss Defendant's affirmative defenses.  (Dkt. #67).  As the Court observed in an order denying Plaintiff's request, the "motion — regardless of the name attached to it by Plaintiff — [was] in actuality just an attempt to relitigate a prior motion to strike, which the Court denied in full in a thirteen-page Order on January 6, 2023."  (Dkt. #68).  The Court further reminded Plaintiff that it had "exhaustively considered Plaintiff's post-motion to dismiss motions," and that it "[would] not countenance further motions that are patently untimely, frivolous, or otherwise impediments to the ultimate resolution of this case."  (*Id.*).

Undeterred, Plaintiff filed a 21-page letter motion on April 28, 2023, seeking leave to amend the Complaint to add claims for constructive discharge, intentional infliction of emotional distress, and retaliation, in addition to supplemental factual allegations.  (Dkt. #69).  On May 1, 2023, Plaintiff changed gears, and filed a letter motion to obtain a "'Protective Order' … in relation to the 'deposition' in this matter."  (Dkt. #70).  In that motion, Plaintiff expressed her belief that "[Defendant's] proposed deposition [of Plaintiff, then scheduled] for May 9th, 2023[, was] specifically intended for annoyance, embarrassment, oppression, and to cause [Plaintiff] undue burden and expenses."  (*Id.* at 3).  Plaintiff characterized the "fact that [she is] *pro se* and there will be at least three attorneys against [her] at an oral deposition" as "extremely oppressive," and indicated that, "[g]iven [her] very fragile emotional state … [she did] not believe, in good faith, that [she] would be able to get

8

through such an oppressive situation." (*Id.*).  Plaintiff therefore requested that the Court "adopt [Plaintiff's] responses to [Defendant's] interrogatories" in lieu of the deposition, or "[o]rder Defendant [] to submit their deposition questions to [Plaintiff] in written form" prior to the deposition.  (*Id.*).

By order issued May 1, 2023, the Court denied both of Plaintiff's letter motions.  (Dkt. #71).  With respect to the motion to amend, the Court observed that it was both untimely and predicated on frivolous arguments.  (*Id.* at 1-3). Regarding Plaintiff's motion for a protective order, the Court acknowledged Plaintiff's concerns regarding the emotional toll of a deposition, but informed Plaintiff of the express preference of the Local Rules of this District for depositions over interrogatories.  (*Id.* at 4 (citing Local Civil Rule 33.3(b))). Additionally, the Court advised Plaintiff that her "*pro se* [status], ... alone does not mean that Defendant is pursuing a deposition for wrongful ends or that Defendant is not otherwise entitled to take Plaintiff's deposition."  (*Id.* (citing *Davis* v. *Citibank, N.A.*, No. 12 Civ. 1678 (RWS), 2013 WL 866862, at *4 (S.D.N.Y. Mar. 8, 2013))).  In closing, the Court reminded Plaintiff of its prior admonition regarding "motions that are patently untimely, frivolous, or otherwise impediments to the ultimate resolution of this case," and further expressed that "[i]f Plaintiff continues to file such motions, the Court may dismiss this case for failure to adhere to Court orders."  (*Id.* at 5).

### 3. Plaintiff's Interlocutory Appeals

On May 5, 2023, Plaintiff filed with the United States Court of Appeals for the Second Circuit a notice of interlocutory appeal of the Court's May 1,

2023 order denying her request to forgo her deposition, prompting Defendant, on May 12, 2023, to seek an extension of time to complete discovery and to once again seek referral for settlement purposes.  (Dkt. #72 (Notice of Interlocutory Appeal), 73 (letter motion seeking time to complete discovery)).  In its letter, Defendant noted that Plaintiff's deposition had "already been adjourned twice, first to May 9 in response to Plaintiff's request for more time to prepare and then to May 17 following the Court's Order denying Plaintiff's motion for a protective order to prevent the deposition, which Plaintiff has now appealed." (Dkt. #73).  By letter filed May 22, 2023, Plaintiff declined to participate in a settlement conference, and expressed no position on the progress of discovery.  (Dkt. #75).  Accordingly, the Court ordered the parties to continue with all discovery pursuant to the existing deadlines, save for Plaintiff's deposition, the deadline for which the Court stayed pending appeal. (Dkt. #76).

On May 25, 2023, Defendant filed a letter motion seeking a Local Rule 37.2 Conference regarding "Plaintiff's [f]ailure to [p]articipate [m]eaningfully in [d]iscovery," including by failing to properly respond to Defendant's interrogatories and document requests.  (Dkt. #77).  The Court granted the conference on the day that it was received, prompting Plaintiff to file with the Second Circuit an "emergency motion to 'stay' all proceedings in the Hon. District Court."  (Dkt. #78, 79-1).  In consequence, the Court adjourned the conference *sine die* and stayed all case management deadlines pending resolution of Plaintiff's interlocutory appeal.  (Dkt. #80).

On September 8, 2023, the Second Circuit dismissed Plaintiff's appeal for lack of jurisdiction, finding that no final order had been issued by this Court, and that Plaintiff had not demonstrated an entitlement to mandamus relief. *Cadet* v. *All. Nursing Staffing of N.Y., Inc.*, No. 23-775, Dkt. #52 (2d Cir. Sept. 8, 2023) (per curiam).  Accordingly, this Court set a status conference for October 11, 2023, and ordered the parties to provide a revised case management plan on or before October 5, 2023.  (Dkt. #83).

Once again, however, Plaintiff took to filing motions.  On September 18, 2023, Plaintiff filed a letter motion seeking reconsideration of the Court's May 1, 2023 order denying her request to add a claim for constructive discharge.  (Dkt. #84).  The next day, Plaintiff filed a 49-page submission seeking leave to amend the Complaint to add claims based on New York wage and hour laws, and an 88-page memorandum of law and exhibits in support thereof.  (Dkt. #85-86).  In response, Defendant filed a pre-motion letter seeking leave to file a motion to dismiss in light of Plaintiff's "longstanding and bad-faith practice of making repetitive, frivolous motions in this case to harass Defendant, impose unnecessary and excessive legal costs, and avoid complying with her discovery obligations."  (Dkt. #87).

On September 20, 2023, the Court denied Plaintiff's motions for reconsideration and to amend, reminding Plaintiff that "[her] attention is best spent on her active Section 1981 and NYCHRL claims, and in preparing for discovery."  (Dkt. #88).  While the Court denied Defendant's request for leave to file a motion to dismiss, it once again reminded Plaintiff "that further

unsolicited and frivolous filings may provide Defendant with a renewed basis for its motion to dismiss on such grounds." (*Id.*).  Finally, the Court reiterated its directive that the parties file a revised case management plan on or before October 5, 2023, and attend a status conference on October 11, 2023.  (*Id.*).

In response, Plaintiff filed another notice of interlocutory appeal on September 28, 2023, this time challenging the basis for the Court's denial of her motion to amend.  (Dkt. #89).  On October 3, 2023, the Second Circuit issued the mandate from its September 8, 2023 dismissal of Plaintiff's appeal. (Dkt. #90).

On October 5, 2023, consistent with the Court's prior order, Defendant filed a proposed case management plan, noting that it had not been reviewed by Plaintiff, despite Plaintiff having had six days to do so.  (Dkt. #91).  By endorsement, the Court ordered Plaintiff to review the dates discussed in the case management plan, and to be prepared to discuss them in person at the October 11, 2023 conference.  (Dkt. #92).  The Court further advised Plaintiff "that her attendance at the upcoming conference is mandatory, and that any failure to attend risks sanctions, including dismissal of her action for failure to adhere to Court orders."  (*Id.*).

### 4. The October 11, 2023 Conference and Plaintiff's Emergency Appeal

Despite this clear instruction, Plaintiff filed with the Second Circuit an "emergency motion for an immediate 'stay' of all proceedings in the Hon. District Court (effective on October 10th, 2023)."  (Dkt. #93-1).  On October 11,

2023, the Second Circuit denied Plaintiff's motion for emergency relief,

observing that Plaintiff had

> filed the motion for emergency stay just before close of business on October 10, 2023, asking for an immediate stay of [] all proceedings in the underlying district court action, including [the October 11, 2023 conference], even though the District Court Order setting that conference was issued twenty days earlier on September 20, 2023.

(Dkt. #94).  Moreover, the Second Circuit made clear to Plaintiff that "the

District Court proceedings are not stayed and [Plaintiff] is required to comply

with the District Court proceedings, including [by] attend[ing] the conference

on October 11, 2023." (*Id.*).

Plaintiff did not attend the October 11, 2023 conference.  Instead,

approximately ten minutes after the 10:00 a.m. start time, Plaintiff advised the

Court's deputy, via telephone, that she was not feeling well, that she was

potentially *en route* to a hospital, and that she was unable to attend the

conference.  (October 11, 2023 Minute Entry; Dkt. #97 (transcript of

October 11, 2023 conference) at 4:14-5:3).[1]  Thereafter, Plaintiff sent an email

to Chambers and the parties confirming her decision to forgo the conference,

indicating that she could not "mentally or emotionally handle [the] conference

today." (Dkt. #97 at 13:19-14:18).

Inasmuch as counsel for Defendant was present in the courtroom, the

Court continued the conference without Plaintiff.  When asked about the status

---

[1]      While the Court has no reason to believe that Plaintiff made a knowing misrepresentation regarding her failure to attend the conference, it notes that Plaintiff has not provided any record of her trip to the hospital.

of discovery, counsel for Defendant represented that Plaintiff had continued to refuse to respond to certain interrogatories, including with respect to alleged damages. (Dkt. #97 at 6:2-7:9). More significantly, counsel for Defendant indicated that Plaintiff had still not consented to a deposition, relating that "her unwillingness is based on the sense of unfairness because she is proceeding by herself and [] the [Defendant] is represented by attorneys." (*Id.* at 7:24-8:3).

In a detailed order issued on October 12, 2023, the Court warned Plaintiff that her strategy of impeding discovery by filing frivolous motions and interlocutory appeals risked incurring terminal sanctions. (Dkt. #95). The Court specifically advised Plaintiff that her "entitlement to relief is predicated on her decision to participate in discovery," and that her failure to do so would leave "the Court [with] no choice but to sanction Plaintiff and dismiss this case." (*Id.* at 4). To move things forward, the Court entered Defendant's revised civil case management plan, which provided for fact discovery to close on or before December 4, 2023, and for the depositions of fact witnesses to be completed on or before December 8, 2023. (*Id.* at 5).

### 5.    Plaintiff's Failure to Appear for Her Rescheduled Deposition

Notwithstanding the clear directive in the Court's October 12, 2023 order, on November 14, 2023, Defendant filed a letter notifying the Court of Plaintiff's refusal to attend her deposition, which had been properly noticed for November 15, 2023. (Dkt. #99). Defendant represented that Plaintiff refused to attend in light of her belief that she was entitled to a remote deposition, and her preference to hold the deposition on December 1, 2023. (Dkt. #99). By

14

endorsement issued that same day, the Court advised Plaintiff that she was incorrect in her belief regarding the remote deposition, and that she was in fact required to attend an in-person deposition. (Dkt. #100). The Court further ordered that the deposition be held on December 1, 2023, Plaintiff's chosen day, and advised Plaintiff that her failure to attend her deposition would "risk[] sanctions, including dismissal of her action for failure to adhere to Court orders." (*Id.*).

Come December 1, 2023, however, Plaintiff once again refused to attend her deposition, this time citing grievances regarding the service of interrogatories and certain representations made by counsel for Defendant at the October 11, 2023 conference. (Dkt. #101). Accordingly, Defendant renewed its letter request seeking leave to file a motion to dismiss and for sanctions, citing "a series of flagrant violations of [Plaintiff's] discovery obligations." (*Id.*).

In response, Plaintiff filed three letters, together containing almost three hundred pages of briefing and exhibits, advancing largely overlapping arguments. (Dkt. #103-105). At a high level, the letters opposed Defendant's desired motion to dismiss and sought entry of judgment as a matter of law in Plaintiff's favor, leave to file a motion for summary judgment, leave to amend the Complaint to add wage and hour claims, and leave to file a motion for sanctions against Defendant. (*Id.*). By order issued December 14, 2023, the Court indicated that it would consider the arguments raised in Defendant's

pre-motion letter seeking sanctions and Plaintiff's response in opposition, and would issue an opinion in due course.  (Dkt. #105).

## DISCUSSION

### A.   Applicable Law

### 1.   Sanctions Pursuant to Federal Rules of Civil Procedure 37

Plaintiff's misconduct arises principally out of her efforts to impede discovery in this matter in the face of the Court's clear orders, including her refusal to attend her deposition.  Therefore, the Court focuses on whether sanctions pursuant to Federal Rule of Civil Procedure 37 are appropriate on this record.[2]

Rule 37(b) provides that when "a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders."  Fed. R. Civ. P. 37(b)(2)(A).  Such just orders may include "striking pleadings in whole or in part; ... dismissing the action or proceeding in whole or in part; [or] rendering a default judgment against the disobedient party."  *Id.*  Rule 37(d), by contrast, establishes that, where "a party ... fails, after being

---

[2]    The Court also notes that Plaintiff failed to abide by its scheduling orders, such that sanction under Federal Rule of Civil Procedure 16 might be appropriate.  That rule provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney ... fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1)(C).

As it happens, Rule 16 implicates substantially the same standards as Rule 37, and indeed incorporates the sanctions authorized by Rule 37 into its statutory text.  *See Houghton* v. *Culver*, 467 F. App'x 63, 65 (2d Cir. 2012) (summary order) (observing that standards developed under Rule 37(b)(2) are used to evaluate a court's dismissal under Rule 16); *Camara* v. *Daise*, No. 98 Civ. 808 (RMB) (RLE), 2001 WL 263006, at *5 (S.D.N.Y. Mar. 9, 2001) (finding that defendant should have brought its motion under Rule 16 rather than Rule 37, but noting that "[a]s a practical matter ... the same standards govern dismissal under both rules").  Accordingly, the Court will continue its analysis under Rule 37.

served with proper notice, to appear for that [party's] deposition," the court may impose sanctions, including "any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(d)(1), (3).  Further, subsections (b) and (d) both require the court to "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C); *see also* Fed. R. Civ. P. 37(d)(3) (same).

Although the court has "wide discretion in imposing sanctions under Rule 37," *Shcherbakovskiy* v. *Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) (internal quotation marks omitted), "[t]here are two basic limitations" that cabin its discretion, *Daval Steel Prods.* v. *M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991); *accord Sentry Ins. a Mut. Co.* v. *Weber*, 720 F. App'x 639, 640 (2d Cir. 2017) (summary order).  *First*, "the sanctions must be 'just[.]'" *M/V Fakredine*, 951 F.2d at 1366.  *Second*, the sanctions "must relate to the particular claim to which the discovery order was addressed."  *Id.*

To that end, several considerations inform a court's analysis of a motion for sanctions under Rule 37, including: "[i] the willfulness of the [noncompliance] or the reason for noncompliance; [ii] the efficacy of lesser sanctions; [iii] the duration of the period of noncompliance[;] and [iv] whether the noncompliant party had been warned of the consequences of noncompliance."  *Agiwal* v. *Mid Island Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009) (internal quotation marks omitted and alteration adopted) (citing

*Nieves* v. *City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)); *accord Doe* v.

*Delta Airlines Inc.*, 672 F. App'x 48, 50 (2d Cir. 2016) (summary order).

Considering each factor in turn, the Court finds that Plaintiff has engaged in a

protracted campaign of willful noncompliance, that Plaintiff was clearly notified

of the consequences of her noncompliance, and that dismissal of Plaintiff's

action is the only just sanction in this matter.[3]

**B.      Application of the *Agiwal* Factors Supports Dismissal of the Case**

**1.      Plaintiff's Noncompliance Was Willful**

The first factor the Court must consider is whether Plaintiff willfully

violated its discovery orders.  "Noncompliance with discovery orders is

considered willful when the court's orders have been clear, when the party has

understood them, and when the party's noncompliance is not due to factors

beyond the party's control."  *Thompson* v. *Jamaica Hosp. Med. Ctr.*, No. 13 Civ.

1896 (RWS), 2015 WL 7430806, at *3 (S.D.N.Y. Nov. 20, 2015).  Additionally,

willful non-compliance is routinely found where a party has repeatedly failed to

---

[3]      As still another basis for sanctions, Federal Rule of Civil Procedure 41(b) provides that
"[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a
defendant may move to dismiss the action or any claim against it."  Fed. R. Civ.
P. 41(b); *see also Hall* v. *Oriska Corp Gen. Cont.*, No. 21-1564, 2022 WL 17420307, at *2
(2d Cir. Dec. 6, 2022) (summary order) ("Therefore, a district court may — based on
both its inherent authority and Rule 41(b) — dismiss an action *sua sponte* for failure to
prosecute or failure to comply with a court order." (collecting cases)).  In considering
dismissal pursuant to this provision, a district court "must weigh five factors: [i] the
duration of the plaintiff's failure to comply with the court order, [ii] whether plaintiff was
on notice that failure to comply would result in dismissal, [iii] whether the defendants
are likely to be prejudiced by further delay in the proceedings, [iv] a balancing of the
court's interest in managing its docket with the plaintiff's interest in receiving a fair
chance to be heard, and [v] whether the judge has adequately considered a sanction
less drastic than dismissal."  *Baptiste* v. *Sommers*, 768 F.3d 212, 216 (2d Cir. 2014)
(per curiam).  This Court's analysis of the *Agiwal* factors — which, as discussed in the
text, counsel in favor of dismissal of the action — would yield a similar result under the
analogous *Baptiste* factors.

attend a deposition in violation of court orders.  *See, e.g.*, *Agiwal*, 555 F.3d at

303 (finding willful noncompliance where plaintiff, in spite of court orders,

failed to attend his deposition over a span of six months); *Manigaulte* v. *C.W.*

*Post of Long Island Univ.*, 533 F. App'x 4, 6 (2d Cir. 2013) (summary order)

(finding willful noncompliance where plaintiff, in spite of court orders, failed to

attend his deposition over a span of one year), *cert. denied*, 571 U.S. 1180

(2014).

As detailed above, issues with discovery in this matter began to percolate

almost immediately after the Court's September 29, 2022 Opinion and Order

resolving the motion to dismiss and have persisted through the close of fact

discovery on December 8, 2023, notwithstanding the Court's clear orders

setting deadlines and expectations for fact discovery.  (*See* Dkt. #38, 41, 43).

Indeed, Plaintiff has flouted nearly every directive issued by the Court

regarding discovery.  To begin, Plaintiff failed to abide by the November 14,

2022 deadline to propose dates for discovery, instead expressing her desire to

move to strike Defendant's answer and for summary judgment.  (Dkt. #47).

After the Court reset the deadline by which the parties should file a joint

submission setting dates for discovery, Plaintiff instead opted to unilaterally file

a case management plan, without input from Defendant.  (Dkt. #53).

Nevertheless, in an effort to get discovery moving, and solicitous of Plaintiff's

*pro se* status, the Court entered Plaintiff's desired plan.  (Dkt. #54).  In doing

so, however, the Court advised Plaintiff of its expectation that the parties would

complete discovery within the extended period contained in Plaintiff's plan. (*Id.*).

Once Plaintiff's case management plan had been entered, it became clear that Plaintiff had no intention to meaningfully participate in discovery. Rather, Plaintiff filed a series of frivolous motions between November 2022 and May 2023, reiterating her disagreement with the Court's decisions regarding the prior motion to dismiss, the forthcoming motion for summary judgment, and the conduct of Plaintiff's deposition. When addressing each of Plaintiff's motions, the Court reiterated its expectations that Plaintiff abide by the deadlines in the case management plan and that she refrain from filing frivolous motions. (*See, e.g.*, Dkt. #68, 71). Still, Plaintiff's motion practice left the Court with no choice but to twice extend the discovery deadline, and then to grant a stay of all discovery pending Plaintiff's interlocutory appeal, which she took after the Court made it clear that it would not further countenance Plaintiff's frivolous motion practice. (*See* Dkt. #64, 76, 80).

When Plaintiff's interlocutory appeal was dismissed, the Court ordered the parties to submit a revised case management plan on October 5, 2023, and attend a discovery conference on October 11, 2023. (Dkt. #83). Plaintiff did neither, and instead renewed her strategy of frivolous motion practice and interlocutory appeals. This time, however, the Second Circuit made it clear to Plaintiff that she "[was] required to comply with the District Court proceedings, including [by] attend[ing] the conference on October 11, 2023" — another judicial directive that Plaintiff chose to ignore. (Dkt. #94).

In an effort to give Plaintiff one last chance to get the case back on track, the Court set a December 8, 2023 deadline for her deposition.  Though Defendant properly noticed her deposition for November 15, 2023, Plaintiff once again refused to attend, offering inconsistent explanations for her absence.  In response, the Court ordered Plaintiff to attend her deposition on December 1, 2023, the specific date on which Plaintiff had indicated she would be available.  (Dkt. #100).  Plaintiff again refused, and fact discovery closed without her deposition.

Plaintiff's conduct evidences a yearlong pattern of willful noncompliance with the Court's orders regarding discovery in general, and regarding Plaintiff's deposition in particular.  As detailed above, each of the Court's orders clearly conveyed to Plaintiff the appropriate dates, deadlines, and expectations, and explained to Plaintiff the reasons why her requests were being denied.  *Lewis* v. *Marlow*, No. 17 Civ. 8101 (KMK), 2021 WL 2269553, at *7 (S.D.N.Y. June 3, 2021) ("[W]hile it is true that *pro se* litigants are 'generally entitled to special solicitude before district courts,' they are still obliged to follow a court's discovery orders." (quoting *Agiwal*, 555 F.3d at 302)).

Likewise, Plaintiff's belief that her deposition would be oppressive and her dissatisfaction with the Court's rulings on her myriad of motions do not excuse her willful noncompliance.  Even a *pro se* plaintiff's general uneasiness with the discovery process does not excuse her from participating in discovery, especially when faced with clear court orders to do so.  *See, e.g.*, *Manigaulte*, 533 F. App'x at 6 (finding that *pro se* plaintiff's "belie[f] [that] defendants are

not entitled to depose him at all," rooted in part by his "alleged stress and anxiety at answering questions," did not excuse his willful noncompliance).  To that end, the Court clearly addressed Plaintiff's concerns about the adversarial nature of the deposition, advised her that the deposition was appropriate and necessary under the law, and expressed its confidence that counsel for Defendant would proceed in a professional manner.  (Dkt. #71).  More to the present point, the Court expressly ordered Plaintiff on three separate occasions to attend her deposition, and each time Plaintiff refused to do so.  (Dkt. #71, 95, 100).

In addition to clear orders from this Court with respect to the deposition, Plaintiff's requests for mandamus relief based on her characterization of the Court's orders were met with clear denials from the Second Circuit.  (Dkt. #82-1, 90, 94).  Indeed, in its October 11, 2023 Order, the Circuit expressly advised Plaintiff that she was "required to comply with the District Court proceedings, including [by] attend[ing] the conference on October 11, 2023." (Dkt. #94).  Plaintiff did not do so.  *See Musgrave* v. *Wolf,* 136 F. App'x 422, 424 (2d Cir. 2005) (summary order) (affirming dismissal where *pro se* Plaintiff's conduct demonstrated a "consistent attitude on [plaintiff's] part that no determination of the [District Court] was decisive or binding, that every issue in the case was open to continual review on the same repeated grounds, and that she was entitled to suspend court discovery orders simply by appealing them repeatedly").

22

Ultimately, Plaintiff has offered no valid justification for her willful and repeated non-compliance with district and circuit court orders, and therefore the Court finds the first *Agiwal* factor favors dismissal.

### 2.      Plaintiff's Noncompliance Was Protracted

In determining the appropriateness of sanctions, courts also consider the related issue of the duration of a party's noncompliance.  Under this factor, courts have found that "[p]eriods of noncompliance as brief as a few months may merit dispositive sanctions.  And periods of greater than five months favor such sanctions even more heavily." *Ramgoolie* v. *Ramgoolie*, 333 F.R.D. 30, 37 (S.D.N.Y. 2019) (internal citations omitted) (collecting cases).

In this case, Plaintiff's yearlong period of non-compliance is more than sufficient to justify dismissal.  Plaintiff's noncompliance began no later than November 2022, in connection with the Court's efforts to establish dates for discovery in this case, and it continued through December 8, 2023, when fact discovery closed without Plaintiff appearing for her deposition.  It is no overstatement for the Court to observe that at no point in this yearlong period did Plaintiff substantially comply with her discovery obligations.  Measured against relevant decisions from the Second Circuit, the duration of Plaintiff's noncompliance with court orders weighs in favor of dismissal.  *See, e.g.*, *Embuscado* v. *D.C. Comics*, 347 F. App'x 700, 701 (2d Cir. 2009) (summary order) (dismissal after three months of non-compliance), *cert. denied*, 558 U.S. 1155 (2010); *Phelan* v. *Cambell*, 507 F. App'x 14, 16 (2d Cir. 2013) (summary order) (dismissal after seven months of non-compliance), *cert. denied*, 571 U.S.

859 (2013); *Battiste-Downie* v. *Covenant House*, 471 F. App'x 78, 79 (2d Cir. 2012) (summary order) (dismissal after one year of noncompliance).

### 3. Plaintiff Was Repeatedly Advised That Noncompliance Could Result in Dismissal of the Action

Next, the Court considers the extent to which Plaintiff was on notice that her noncompliance would result in dismissal. While "severe sanctions like dismissal … should be imposed only if the party has been warned that such a sanction will follow from continued non-compliance and has nevertheless refused to comply," *Urbont* v. *Sony Music Ent.*, No. 11 Civ. 4516 (NRB), 2014 WL 6433347, at *3 (S.D.N.Y. Nov. 6, 2014), dismissal is nonetheless appropriate where that party "continued to ignore the court's orders despite the court's [prior] warning … that further noncompliance could result in dismissal of the action," *Murray* v. *Mitsubishi Motors of N. Am., Inc.*, 462 F. App'x 88, 90 (2d Cir. 2012) (summary order).

Here, the record is replete with warnings to Plaintiff, not only of the theoretical possibility of sanctions, but of the likelihood of dismissal in light of her willful noncompliance. In total, the Court clearly warned Plaintiff of the possibility of dismissal in five discrete orders or endorsements, none of which prompted Plaintiff's compliance. (Dkt. #71, 88, 92, 95, 100). Indeed, the Court's October 12, 2023 order emphasized the gravity of the situation by specifically advising Plaintiff of the factors that would weigh in a potential dismissal, and how Plaintiff's various instances of willful misconduct would justify dismissal under such factors. (Dkt. #95 at 4-5).

The Court finds that Plaintiff was clearly on notice of the strong possibility of dismissal, and nevertheless refused to comply. Here, again, the caselaw from this Circuit counsels in favor of dismissal. *See, e.g.*, *Manigaulte*, 533 F. App'x at 6-7 (dismissal appropriate where district court twice warned plaintiff that dismissal would follow from non-appearance at deposition); *Agiwal*, 555 F.3d at 303 (dismissal appropriate where plaintiff failed to attend his deposition, which had been rescheduled three times, after court orders to do so).

### 4.    Lesser Sanctions Would Not Suffice

Finally, in evaluating the appropriateness of a particular sanction, "a court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future." *Silva* v. *Cofresi*, No. 13 Civ. 3200 (CM) (JCF), 2014 WL 3809095, at *3 (S.D.N.Y. Aug. 1, 2014). At the same time, "deliberate and persistent noncompliance" may render "lesser sanctions inappropriate," *Embuscado*, 347 F. App'x at 701, and a "district court is 'not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record,'" *Shcherbakovskiy* v. *Seitz*, 450 F. App'x 87, 88 (2d Cir. 2011) (summary order) (citation omitted). *See also Sieck* v. *Russo*, 869 F.2d 131, 134 (2d Cir. 1989) ("Were we to adopt a position that overly inhibits the imposition of the harsher sanctions authorized by Rule 37, we would turn the rule into a 'paper tiger.'" (internal citation omitted)).

Here, the record clearly evidences a pattern of deliberate and persistent noncompliance, such that no sanction short of dismissal would be sufficient to resolve the matter.  For more than one year, the Court has promptly and diligently resolved Plaintiff's torrent of filings in an effort to keep this case on track.  Yet each of its directives has been met with resistance — or, worse yet, disregard — by Plaintiff.  Given these efforts, the Court has no confidence that any lesser sanction would be effective in securing Plaintiff's cooperation.  *See Battiste-Downie*, 471 F. App'x at 79 ("[T]he efficacy of lesser sanctions to correct such behavior is doubtful, given that [plaintiff] refused to respond to the discovery demands even after being ordered repeatedly by the District Court to do so."); *Antonmarchi* v. *Consol. Edison Co. of N.Y.*, 514 F. App'x 33, 35 (2d Cir. 2013) (summary order) ("[T]he efficacy of lesser sanctions to correct [*pro se* plaintiff's] noncompliance is doubtful, given that the court gave him two opportunities to comply with its orders, neither of which he took.").

### 5.   Consideration of the *Agiwal* Factors Supports Dismissal

Ultimately, a party's compliance with discovery orders "is necessary to the integrity of our judicial process," and "[a] party who flouts such orders does so at [her] peril."  *Update Art, Inc.* v. *Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988).  "*Pro se* litigants, though generally entitled to 'special solicitude' before district courts, are not immune to dismissal as a sanction for noncompliance with discovery orders."  *Agiwal*, 555 F.3d at 302 (quoting *Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006)).

The Court finds that each of the *Agiwal* factors weighs strongly in favor of dismissal.  For the past year, Plaintiff has willfully failed to comply with her discovery obligations, including each of the Court's several orders with respect to her deposition.  Plaintiff has done so in the face of clear warnings from the Court regarding the consequences of her actions, and has given the Court no indication that she ever intends to comply with its directives.  Accordingly, dismissal of Plaintiff's action is just and appropriate under the circumstances. *See Valentine* v. *Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994) (affirming dismissal where "[t]he record [of the] case reveals [plaintiff's] sustained and willful intransigence in the face of repeated and explicit warnings from the court that the refusal to comply with court orders to appear for [her] deposition would result in the dismissal of [her] action").

### 6.   The Court Will Not Impose Attorneys' Fees and Costs

Having found sanctions appropriate pursuant to Rule 37(b)(2)(A) and (d), the Court next considers the requirement under both rules that it "order the disobedient party … to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C); *see also* Fed. R. Civ. P. 37(d)(3).

As detailed above, the Court finds no evidence that Plaintiff's failures were substantially justified by her disagreement with the Court's decisions in this case.  That said, the Court recognizes that Plaintiff is proceeding *pro se* and *in forma pauperis* (Dkt. #6), and that courts in this Circuit have regularly

27

found the imposition of Rule 37 monetary sanctions to be unwarranted in such circumstances. *See, e.g.*, *Baez* v. *Kennedy Child Study Ctr.*, No. 11 Civ. 7635 (JMF), 2013 WL 705913, at *2 (S.D.N.Y. Feb. 27, 2013) (dismissing complaint pursuant to Rule 37 but declining to impose monetary sanctions in light of the plaintiff's *pro se* and *in forma pauperis* status); *Quiles* v. *Beth Israel Med. Ctr.*, 168 F.R.D. 15, 19 (S.D.N.Y. 1996) (declining to award monetary sanctions against *pro se* plaintiff who repeatedly ignored court orders, but dismissing case as a sanction). As in those cases, the Court finds that an award of expenses would be unjust under the present circumstances.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint is hereby DISMISSED with prejudice. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   January 8, 2024
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge